IN THE SUPREME COURT OF NORTH CAROLINA

No. 252A16

Filed 6 April 2018

MICHAEL KRAWIEC, JENNIFER KRAWIEC, and HAPPY DANCE, INC./CMT DANCE, INC. (d/b/a FRED ASTAIRE FRANCHISED DANCE STUDIOS)

v.

JIM MANLY, MONETTE MANLY, METROPOLITAN BALLROOM, LLC, RANKO BOGOSAVAC, and DARINKA DIVLJAK

Appeal pursuant to N.C.G.S. § 7A-27(a)(3)(a) from an order dated 22 January 2016 entered by Judge Louis A. Bledsoe, III, Special Superior Court Judge for Complex Business Cases appointed by the Chief Justice pursuant to N.C.G.S. § 7A-45.4, in Superior Court, Mecklenburg County. Heard in the Supreme Court on 30 August 2017.

*Hatcher Legal, PLLC, by Erin B. Blackwell and Nichole M. Hatcher, for plaintiff-appellants.*

*Brock & Scott, PLLC, by Renner St. John, for defendant-appellees.*

JACKSON, Justice.

In this case we consider whether plaintiffs have stated claims for tortious interference with contract, misappropriation of trade secrets, unfair and deceptive practices, civil conspiracy, and unjust enrichment sufficient to survive defendants' motions to dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(6). *See* N.C.G.S. § 1A-1, Rule 12(b)(6) (2017). Because we conclude that plaintiffs' amended complaint reveals the absence of law or facts essential to these claims, or alleges facts

that necessarily defeat these claims, we affirm the portions of the North Carolina Business Court's 22 January 2016 Order and Opinion on Defendants' Motions to Dismiss Amended Complaint dismissing the claims listed above.

According to the factual allegations in plaintiffs' amended complaint, which we take as true for purposes of reviewing an order on a motion to dismiss pursuant to Rule 12(b)(6), *see State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 442, 666 S.E.2d 107, 114 (2008) (quoting *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006)), plaintiffs Michael Krawiec and Jennifer Krawiec are residents and citizens of North Carolina who own plaintiff Happy Dance, Inc./CMT Dance, Inc. (Happy Dance)—a North Carolina corporation doing business as Fred Astaire Franchised Dance Studios in Forsyth County. Defendants Jim Manly and Monette Manly own defendant Metropolitan Ballroom, LLC (Metropolitan Ballroom) (collectively, the Metropolitan defendants), which is a North Carolina limited liability company doing business in Mecklenburg County. Defendants Ranko Bogosavac, a citizen of Bosnia and Herzegovina, and Darinka Divljak, a Serbian citizen, (the dancer defendants) were employed by plaintiffs pursuant to O1-B nonimmigrant work visas.

On or about 18 July 2011, plaintiffs entered into contracts with Bogosavac and Divljak pursuant to which plaintiffs procured the visas in exchange for each dancer's express promise to work exclusively for plaintiffs as a dance instructor and performer.

Bogosavac, who previously had been employed by plaintiffs, was to work exclusively for plaintiffs from 31 January 2012 to 3 January 2013, and Divljak was to do the same from 1 September 2011 to 31 August 2014. The dancer defendants also agreed not to work for any other company that offered dance instruction or competed against Happy Dance for one year after either the expiration or termination of their employment with Happy Dance.

On or about 7 February 2012, the dancer defendants began working as dance instructors for the Metropolitan defendants in violation of their respective employment agreements with plaintiffs. In support of this allegation, plaintiffs attached to their amended complaint copies of Bogosavac's and Divljak's biographies as they appeared on a list of Metropolitan Ballroom's staff on Metropolitan Ballroom's website on 7 February 2012. In addition, according to plaintiffs, the dancer defendants shared confidential information with the Metropolitan defendants, specifically, plaintiffs' "ideas and concepts for dance productions, marketing strategies and tactics, as well as . . . customer lists [containing] contact information." From this information, the Metropolitan defendants produced and marketed plaintiffs' dance shows as their own, original productions. The dancer defendants also lured away plaintiffs' customers, resulting in a significant loss of revenue for plaintiffs.

Based on these factual allegations, plaintiffs asserted various causes of action against all defendants. The Metropolitan defendants and dancer defendants all filed motions to dismiss the amended complaint in its entirety pursuant to Rule 12(b)(6). In its order and opinion regarding the motions to dismiss, the Business Court granted defendants' motions as to all of plaintiffs' claims except for plaintiffs' claims for breach of contract, fraudulent misrepresentation, unjust enrichment, and punitive damages against the dancer defendants. Plaintiffs filed a notice of appeal from the Business Court's order and opinion to this Court pursuant to N.C.G.S. § 7A-27(a)(2)-(3). In their appeal, plaintiffs challenge the Business Court's dismissal of their claims against the Metropolitan defendants for tortious interference with contract, misappropriation of trade secrets, unfair and deceptive practices, civil conspiracy, and unjust enrichment. Plaintiffs also contest the Business Court's dismissal of their claims against the dancer defendants for misappropriation of trade secrets and civil conspiracy. We consider each of plaintiffs' dismissed claims in turn.

On appeal from an order dismissing an action pursuant to Rule 12(b)(6), we conduct de novo review. *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 8 (2015) (citing *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013)). A Rule 12(b)(6) dismissal "is appropriate when the complaint 'fail[s] to state a claim upon which relief can be granted.' " *Id.* at 448, 781 S.E.2d at 7 (alteration in original) (quoting N.C.G.S. § 1A-1, Rule 12(b)(6) (2013)). We have determined that a complaint fails in this manner when: "(1) the complaint on

its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)). "When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true." *Ridgeway Brands*, 362 N.C. at 442, 666 S.E.2d at 114 (quoting *Stein*, 360 N.C. at 325, 626 S.E.2d at 266). In conducting our analysis, we also consider any exhibits attached to the complaint because "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." N.C.G.S. § 1A-1, Rule 10(c) (2017).

The Business Court dismissed plaintiffs' claim against the Metropolitan defendants for tortious interference with contract on the basis that plaintiffs failed to allege that the Metropolitan defendants knew of the exclusive employment agreement between plaintiffs and the dancer defendants. Plaintiffs contend that the Business Court was in error because plaintiffs' factual allegations included the statement that the Metropolitan defendants had "knowledge of the contracts." We disagree.

Whether plaintiffs sufficiently alleged that the Metropolitan defendants had knowledge of the exclusivity agreement is essential because a claim for tortious interference with contract requires proof of five elements:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing

*Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954)).

The entirety of the relevant allegation in plaintiffs' amended complaint is that "Defendants Metropolitan and Manlys, as well as Defendants Bogosavac and Divljak, all had knowledge and/or should have had knowledge of the existing contracts pursuant to the O1-B work visas between Plaintiffs and Defendants Bogosavac and Divljak." That the Metropolitan defendants allegedly knew of the existing contract "pursuant to the O1-B work visas" does not satisfy plaintiffs' Rule 12(b)(6) burden because the amended complaint is devoid of any allegation that the work visas themselves constituted or contained any reference to an exclusivity agreement. In fact, elsewhere in the amended complaint, plaintiffs only alleged that "[p]ursuant to the second I-129 Petition . . . Defendant Bogosavac agreed to work exclusively for Plaintiffs . . . . The agreement did not authorize Defendant Bogosavac to engage in other part-time or concurrent work with other dance studios." Regarding Divljak, plaintiffs stated, in even more general terms, "Pursuant to the contract with Plaintiffs, Defendant Divljak was to work exclusively for Plaintiffs . . . . The agreement did not authorize Defendant Divljak to engage in other part-time or

concurrent work with other dance studios." Neither of these factual allegations demonstrates how the Metropolitan defendants could have known of the alleged exclusive employment agreement through knowledge of the O1-B work visas. Therefore, we conclude that "the complaint on its face reveals the absence of facts sufficient to make a good claim" for tortious interference with contract because the plaintiffs failed to allege that the Metropolitan defendants had knowledge of the exclusivity provision. *Wood*, 355 N.C. at 166, 558 S.E.2d at 494 (citing *Oates*, 314 N.C. at 278, 333 S.E.2d at 224).

We now turn to plaintiffs' claims for misappropriation of trade secrets against all defendants. The Business Court dismissed these claims on the basis that plaintiffs both failed to identify the alleged trade secrets with sufficient particularity and to allege the specific acts of misappropriation in which defendants engaged. On appeal, plaintiffs contend that their description of their trade secrets as "original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information," was legally sufficient. Plaintiffs also argue that customer lists and contact information are protectable trade secrets as a matter of law. Finally, plaintiffs maintain that they adequately described the act of misappropriation by stating that the dancers learned of the pertinent information in confidence while employed by plaintiffs, that the dancers shared that information with the Metropolitan defendants without plaintiffs' consent, and the Metropolitan defendants used that information to benefit their own business.

Consequently, plaintiffs contend that the Business Court erred in dismissing their claim. We disagree with plaintiffs and reach the same conclusion as the Business Court, albeit based upon a somewhat different rationale.

Section 66-153 of the General Statutes provides that an "owner of a trade secret shall have remedy by civil action for misappropriation of his trade secret." N.C.G.S. § 66-153 (2017). For purposes of the Trade Secrets Protection Act, misappropriation is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." *Id.* § 66-152(1) (2017). A trade secret consists of

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 66-152(3) (2017). As to the burden of proof, the General Statutes further direct:

> Misappropriation of a trade secret is prima facie established by the introduction of substantial evidence that the person against whom relief is sought both:

(1) Knows or should have known of the trade secret; and

(2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.

*Id.* § 66-155 (2017).

This Court has not considered the requirements for pleading a claim for misappropriation of trade secrets previously, but we conclude that the reasoning of our Court of Appeals, which mirrors the notice-pleading standard set forth in North Carolina Rule of Civil Procedure 8,[1] is persuasive on this topic. The Court of Appeals has stated, "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008) (quoting *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510-11, 606 S.E.2d 359, 364 (2004)) (internal quotation marks omitted), *disc. rev. denied*, 363 N.C. 139, 674 S.E.2d 422 (2009); *see Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002) (concluding that a defendant had

---

[1] Rule 8(a)(1) requires "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C.G.S. § 1A-1, Rule 8(a)(1) (2017).

sufficient notice of a claim for misappropriation of trade secrets to survive a motion to dismiss when the court could identify the trade secret as "the allegedly unique combination of marketing strategies and processes for the implementation of a program under which consumers would be able to use rebates from their qualified purchases to fund a 529 Plan"); *see also SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 447 (Del. 2000) (noting that a plaintiff "must disclose the allegedly misappropriated trade secrets with reasonable particularity" in order to, *inter alia*, "ensure that defendants are put on notice of the claimed trade secrets early in the litigation, preventing defendants from being subject to unfair surprise on the eve of trial"). This standard also has been applied by federal courts in our state. *See Prometheus Grp. Enters. v. Viziya Corp.,* No. 5:14-CV-32-BO, 2014 WL 3854812, at *7 (E.D.N.C. Aug. 5, 2014) ("In order to adequately plead misappropriation of trade secrets, a plaintiff 'must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur.'" (quoting *Analog Devices, Inc. v. Michalski,* 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003))); *Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664, 676 (M.D.N.C. 2009) ("The alleged trade secret information must be identified 'with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur.'" (quoting *Analog Devices*, 157 N.C. App. at 468, 579 S.E.2d

at 453)). In contrast, "a complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'" *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 585-86 (quoting *VisionAIR*, 167 N.C. App. at 511, 606 S.E.2d at 364).

Provided that the information meets the two requirements for a trade secret as defined in subsection 66-152(3), we agree with the determination of the Court of Appeals that "[i]nformation regarding customer lists, pricing formulas and bidding formulas can qualify as a trade secret under G.S. § 66-152(3)." *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 525, 586 S.E.2d 507, 511 (2003) (citation omitted). We are persuaded by the fact that other jurisdictions have reached the same conclusion. *See, e.g.*, *Home Pride Foods, Inc. v. Johnson*, 262 Neb. 701, 709, 634 N.W.2d 774, 781 (2001) ("We agree [with other cited jurisdictions] and hold that a customer list can be included in the definition of a trade secret . . . ."); *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 440, 971 P.2d 936, 943 (1999) (en banc) ("A customer list is one of the types of information which can be a protected trade secret if it meets the criteria of the Trade Secrets Act." (citing *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 262 Cal. Rptr. 92 (1989))); *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.*, 96-CA-00620-SCT, 96-CA-00633-SCT (¶¶ 21, 28), 725 So. 2d 902, 910-11 (1998) (en banc) (holding that the information on a customer list qualified as a trade secret when evidence showed that it had independent economic value, was

not known or readily ascertainable, and was subject to reasonable efforts to maintain its secrecy). However, in light of the requirements of subsection 66-152(3), a customer database did not constitute a trade secret when "the record show[ed] that defendants could have compiled a similar database through public listings such as trade show and seminar attendance lists." *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 370, 555 S.E.2d 634, 640 (2001) (citation omitted). Similarly, a plaintiff failed to allege sufficiently that its "customer lists and other compilations of customer data" were protected trade secrets when it "ha[d] not come forward with any evidence to show that the company took any special precautions to ensure the confidentiality of its customer information" and "any information used to contact the clients would have been easily accessible to defendant through a local telephone book." *NovaCare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 478, 528 S.E.2d 918, 922 (2000); *see also Asheboro Paper*, 599 F. Supp. 2d at 676 (noting that "[c]ustomer names and addresses may not be protected as a 'trade secret' inasmuch as they can be readily ascertained through independent development" (citing *UBS PaineWebber, Inc. v. Aiken*, 197 F. Supp. 2d 436 (W.D.N.C. 2002))).

In their amended complaint, plaintiffs described their trade secrets only as their "original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information." Plaintiffs provided no further detail about these ideas, concepts, strategies, and tactics sufficient to put defendants on notice as to the precise information allegedly

misappropriated. In addition, plaintiffs' failure to describe a specific idea, concept, strategy, or tactic with respect to their marketing plan or to provide any detail about their dance productions renders their claim too general for this Court to determine—even taking plaintiffs' factual allegations as true—whether there is a "formula, pattern, program, device, compilation of information, method, technique, or process" at issue that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering." N.C.G.S. § 66-152(3)(a). Similarly, plaintiffs' amended complaint, on its face, does not show that plaintiffs' customer lists constituted a protected trade secret because plaintiffs failed to allege that the lists contained any information that would not be readily accessible to defendants. Like the Ohio Court of Common Pleas in an often cited case involving a dispute between a dance studio and its former employee, we recognize that "[t]here is no presumption that a thing is a secret," and emphasize the shortcomings of "general allegations" in making a case for misappropriation of trade secrets. *Arthur Murray Dance Studios of Cleveland, Inc. v. Witter*, 105 N.E.2d 685, 709-10 (Ohio Ct. Com. Pl. 1952) (citing *Super Maid Cook-Ware Corp. v. Hamil*, 50 F.2d 830, 832 (5th Cir. 1931)).

In light of the concern inherent in any misappropriation of trade secrets claim that, in pursuing litigation, the alleged trade secret not be revealed in a public document such as the complaint, *see Glaxo Inc. v. Novopharm Ltd.*, 931 F. Supp. 1280, 1301 (E.D.N.C. 1996), we note at this point that our analysis of plaintiffs' claim is

entirely dependent upon the extremely general nature of plaintiffs' allegations. There exists a wide gulf between plaintiffs' description of its alleged trade secrets as "original ideas and concepts for dance productions" and "marketing strategies and tactics," and exposure or compromise of the critical details of those alleged trade secrets. If plaintiffs had provided additional descriptors to put defendants and the courts on notice as to which "original ideas and concepts for dance productions" and "marketing strategies and tactics," were allegedly misappropriated, then we would have a different claim before us with the potential for a different outcome.

Additionally, the only allegation of secrecy in plaintiffs' amended complaint is that "Plaintiffs shared this information with Defendants Bogosavac and Divljak in confidence." That plaintiff shared the information at issue with the dancer defendants with nothing more than an expectation of confidentiality is insufficient to establish that the information was the "subject of efforts that [were] reasonable under the circumstances to maintain its secrecy." *Id.* § 66-152(3)(b). Plaintiffs' amended complaint is devoid of any allegation of a method, plan, or other act by which they attempted to maintain the secrecy of the alleged trade secrets. For all of these reasons, plaintiffs failed to allege the existence of a trade secret in their amended complaint.

We next address the Metropolitan defendants' motion to dismiss plaintiffs' claim for unfair and deceptive practices (UDP). The Business Court concluded that

plaintiffs failed to allege egregious or aggravating circumstances essential to the claim because plaintiffs did not sufficiently plead their claim for tortious interference with contract or misappropriation of trade secrets. On appeal from the dismissal of their UDP claim, plaintiffs argue only that the Business Court should not have dismissed the claim because they pleaded valid claims for tortious interference with contract and misappropriation of trade secrets. We disagree.

We have recognized an action for UDP based on the provision of the General Statutes that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." *Id.* § 75-1.1(a) (2017); *see Dalton v. Camp*, 353 N.C. 647, 655-56, 548 S.E.2d 704, 710 (2001). To plead a valid claim for UDP, "a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711 (citing *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991)). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (citing *Ellis v. N. Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 131 (1990)).

Here the unfair or deceptive acts alleged in the amended complaint were that the Metropolitan defendants had "maliciously, deliberately, secretly, wantonly, recklessly, and unlawfully solicit[ed] and subsequently hir[ed] Plaintiffs' employees, Bogosavac and Divljak, and misappropriat[ed] Plaintiffs' trade secrets for their own benefit." Plaintiffs made no further allegations of specific unfair or deceptive acts. Because we determined that plaintiffs failed to state a valid claim for tortious interference with contract or misappropriation of trade secrets, we necessarily must conclude that plaintiffs also failed to adequately allege that the Metropolitan defendants "committed an unfair or deceptive act or practice." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711. Consequently, plaintiffs have not stated a valid claim for UDP.

We turn next to plaintiffs' claims for civil conspiracy against all defendants. The Business Court dismissed the claim against the dancer defendants on the grounds that a civil conspiracy claim must be based on an underlying claim and the underlying claim for fraudulent misrepresentation—the only applicable, surviving claim—was based on allegations of fraud completely unrelated to the alleged, conspiratorial agreement between the dancer defendants and Metropolitan defendants. The Business Court then dismissed the civil conspiracy claim against the Metropolitan defendants on the grounds that all underlying tort claims against the Metropolitan defendants also had been dismissed. On appeal, plaintiffs argue that they pleaded a valid claim for civil conspiracy because that claim rested on

-16-

plaintiffs' legitimate claims against all defendants based on the underlying tort of misappropriation of trade secrets. We disagree.

"A civil action for conspiracy is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy, rather than the conspiracy itself." *Burton v. Dixon*, 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963). "To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *Ridgeway Brands*, 362 N.C. at 444, 666 S.E.2d at 115 (quoting *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)). This is because a "conspiracy charged does no more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under the proper circumstances the acts of one may be admissible against all." *Henry*, 310 N.C. at 87, 310 S.E.2d at 334 (first citing *Shope v. Boyer*, 268 N.C. 401, 150 S.E.2d 771 (1966); then citing *Muse v. Morrison*, 234 N.C. 195, 66 S.E.2d 783 (1951)). Therefore, we have determined that a complaint sufficiently states a claim for civil conspiracy when it alleges "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *Ridgeway Brands*, 362 N.C. at 444, 666 S.E.2d at 115 (citing *Muse*, 234 N.C. at 198, 66 S.E.2d at 785).

Two examples from our case law are instructive. We have held that a plaintiff "fail[ed] to allege any overt, tortious, or unlawful act which any defendant committed in furtherance of the conspiracy" when the defendants' attempt to bankrupt the plaintiff by "subscribing to stock" from a third-party supplier did not breach their agreement to "from time to time [ ] purchase *some* of [their] requirements of such parts and other articles as are warehoused and sold by [plaintiff]." *Shope*, 268 N.C. at 404-05, 150 S.E.2d at 773. In contrast, we also have held that a plaintiff sufficiently pleaded a cause of action for civil conspiracy when the plaintiff specifically alleged that the parties to the conspiracy concealed and falsified medical records— acts that "would amount to the common law offense of obstructing public justice." *Henry*, 310 N.C. at 87, 310 S.E.2d at 334 (citation omitted).

Plaintiffs here alleged in their amended complaint that the Metropolitan defendants reached an agreement with the dancer defendants according to which the latter "would unlawfully leave Plaintiffs' dance studio to come work for Defendants Metropolitan and Manlys, unlawfully solicit Plaintiffs' customers, and unlawfully disclose Plaintiffs' trade secrets to Metropolitan and Manlys in order to cripple or eliminate Plaintiffs as a competitor in the dance industry." Plaintiffs asserted that, as a result of the conspiracy, "Plaintiffs' business and reputation were significantly damaged."

Regarding the allegations that the dancer defendants unlawfully left plaintiffs to work for the Metropolitan defendants and that all defendants unlawfully solicited plaintiffs' customers, plaintiffs' amended complaint must fail because it lacks sufficient detail. It is unclear from the face of the amended complaint which laws were allegedly violated and how defendants violated them. To the extent these allegations of unlawfulness may be read to invoke plaintiffs' claim for tortious interference with contract as to the dancer defendants' alleged exclusive employment agreement and plaintiffs' claim for misappropriation of trade secrets as to the customer lists, we already have determined that plaintiffs failed to plead either of those claims sufficiently. The only remaining allegation of a wrongful act in furtherance of the conspiracy is that the dancer defendants unlawfully disclosed plaintiffs' trade secrets to the Metropolitan defendants. As we have already determined that plaintiffs failed to allege a viable claim for misappropriation of trade secrets, we now conclude that plaintiffs did not plead any wrongful acts that were done in furtherance of the alleged conspiracy. Accordingly, the claims for civil conspiracy against all defendants necessarily fail.

Next, we consider plaintiffs' claim for unjust enrichment against the Metropolitan defendants. The Business Court dismissed plaintiffs' unjust enrichment claim against the Metropolitan defendants on two grounds. First, the Business Court determined that plaintiffs could not seek a remedy in equity through their unjust enrichment claim while seeking the exact same damages at law through

their breach of contract claim against the dancer defendants—a claim that survived defendants' motions to dismiss. Second, the Business Court determined that plaintiffs failed to plead that the Metropolitan defendants took any action to solicit or induce plaintiffs to incur the expenses alleged, which the Business Court found to be a necessary element of an unjust enrichment claim. On appeal, plaintiffs argue that they adequately stated a claim for unjust enrichment by alleging that the Metropolitan defendants accepted the benefit of employing the dancers without obtaining new visas and that plaintiffs did not procure the visas gratuitously. We disagree with plaintiffs' argument, and although we agree with the conclusion the Business Court reached, we base our decision on different grounds.

"The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Atl. Coast Line R.R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95-96, 150 S.E.2d 70, 73, (1966) (first citing *Beacon Homes, Inc. v. Holt*, 266 N.C. 467, 146 S.E.2d 434 (1966); then citing *Dean v. Mattox*, 250 N.C. 246, 108 S.E.2d 541 (1959)). A claim for unjust enrichment "is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). "The claim is not based on a promise but is imposed by law to prevent an unjust enrichment." *Id.* at 570, 369 S.E.2d at 556. "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party," and

"[t]he benefit must not be gratuitous and it must be measurable." *Id.* at 570, 369 S.E.2d at 556 (citing *Britt v. Britt*, 320 N.C. 573, 359 S.E.2d 467 (1987)).

Plaintiffs stated in their amended complaint that "Defendants Metropolitan and Manlys have [ ] received the benefit of Plaintiffs' procurement of the O1-B work visas for Defendants Bogosavac and Divljak, because they were able to employ Defendants Bogosavac and Divljak, though unlawfully, without paying for their O1-B work visas." This allegation is contradicted by the Form I-797A and Form I-797B from the United States Citizenship and Immigration Services, which plaintiffs attached to their amended complaint. Both forms indicate that petition approval for a nonimmigrant worker visa applies only to the employment outlined in the petition and that any change in a nonimmigrant worker's employment requires the filing of a new I-129 visa petition. Accordingly, if the Metropolitan defendants employed the dancer defendants without filing new petitions, no benefit was conferred on the Metropolitan defendants by plaintiffs because their petitions did not authorize the dancers' employment with the Metropolitan defendants. As a conferred benefit is a necessary element of a claim for unjust enrichment, plaintiffs' "complaint discloses some fact that necessarily defeats the plaintiff[s'] claim." *Wood*, 355 N.C. at 166, 558 S.E.2d at 494 (citing *Oates*, 314 N.C. at 278, 333 S.E.2d at 224).

Finally, plaintiffs argue on appeal that the Manlys can be held liable in their individual capacities for the tort claims brought against Metropolitan Ballroom as a

corporate entity. In the order and opinion below, the Business Court dismissed all claims against the Manlys that were based on the theory of piercing the corporate veil. Citing to our decision in *Green v. Freeman*, the Business Court correctly observed that "[t]he doctrine of piercing the corporate veil is not a theory of liability," 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013), and consequently that the theory is rendered inapposite when, as here, all underlying claims have been or should be dismissed. Indeed, in the absence of an underlying claim, "evidence of domination and control is insufficient to establish liability." *Id.* at 146, 749 S.E.2d at 271. Because plaintiffs have failed to state a valid, underlying claim for relief against the Metropolitan defendants, we agree with the Business Court that it is immaterial whether Metropolitan Ballroom or the Manlys, in their individual capacities, would be liable for those claims.

Pursuant to Rule 12(b)(6), we dismiss a complaint or any claim therein when the plaintiff "fail[s] to state a claim upon which relief can be granted." *Arnesen*, 368 N.C. at 448, 781 S.E.2d at 7 (alteration in original) (quoting N.C.G.S. § 1A-1, Rule 12(b)(6)). For the reasons stated above, we hold that plaintiffs failed to state valid claims for tortious interference with contract, unfair and deceptive practices, and unjust enrichment against the Metropolitan defendants. We also hold that plaintiffs failed to state valid claims for misappropriation of trade secrets and civil conspiracy against all defendants. Accordingly, we affirm, as modified herein, the portions of

the Business Court's order and opinion dismissing those claims and remand this case to that court for further proceedings consistent with this Court's opinion.

MODIFIED AND AFFIRMED; REMANDED.

Justice BEASLEY dissenting.

I dissent from the majority opinion to specifically highlight the problematic and muddled standards for North Carolina plaintiffs seeking to properly plead a claim for misappropriation of trade secrets. In this case this Court considered whether plaintiffs' description of their trade secrets as "original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information" was sufficient to put defendants on notice of trade secrets allegedly misappropriated. I believe that a complaint alleging the above is sufficient under our liberal pleading standards to put defendants on notice of the transactions and occurrences at issue.

The majority's reasoning and reliance on various authority conflate the North Carolina standards for Rule 12(b)(6) motions to dismiss, motions for preliminary injunction, and motions for summary judgment as well as other jurisdictions' standards regarding discovery. Notably, the majority relies on cases that are in

various procedural postures, and in doing so, the majority validates a heightened pleading standard for a claim in which public disclosure of confidential information is a real concern for plaintiffs. Further, the majority's erroneous affirmation of the trial court's dismissal of this single claim is also the basis for the majority's affirmation of the trial court's dismissal of plaintiffs' unfair and deceptive trade practices and civil conspiracy claims against Metropolitan Ballroom and the Manlys in their individual capacities.[1] Therefore, I respectfully dissent.

The sufficiency of a claim for misappropriation of trade secrets is a matter of first impression for this Court. Generally, the North Carolina pleading standards require a "*short and plain* statement of the claim sufficiently particular to give the court and the parties *notice* of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C.G.S. § 1A-1, Rule 8(a)(1) (2017) (emphases added). This is not a difficult standard for plaintiffs to meet: "The complaint is construed liberally," *U.S. Bank Nat'l Ass'n v. Pinkney*, 369 N.C. 723, 726, 800 S.E.2d 412, 415 (2017), "view[ing] the allegations as true and . . . in the light most favorable to the non-moving party," *id.* at 726, 800 S.E.2d at 415 (alterations in original) (quoting *Kirby v. NC DOT*, 368 N.C. 847, 852, 786 S.E.2d 919, 923 (2016)), and the claim is not dismissed "unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which

---

[1] Even if the misappropriation of trade secrets claim was sufficiently pleaded, I express no opinion regarding the sufficiency of the pleadings for these additional claims.

would entitle him to relief," *Holloman v. Harrelson*, 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (2002) (alteration in original) (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)), *disc. rev. denied*, 355 N.C. 748, 565 S.E.2d 665 (2002). Rule 12(b)(6) "generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery," *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 166 (1970) (quoting *Am. Dairy Queen Corp. v. Augustyn*, 278 F. Supp. 717, 721 (N.D. Ill. 1967)), such as "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim," *Wood v. Guilford County,* 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted).

To sufficiently plead a prima facie claim for misappropriation of trade secrets, a plaintiff must allege defendant (1) "[k]nows or should have known of the trade secret," and (2) "[h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C.G.S. § 66-155 (2017). There is no statutory heightened pleading standard for misappropriation of trade secrets, *see id.* § 1A-1, Rule 9 (2017), and additional guidance from the Court of Appeals on pleading this particular claim rests on cases evaluating the issue from an entirely different procedural posture than a motion to dismiss. In *Washburn v. Yadkin Valley Bank & Trust*, our Court of Appeals quoted language from *VisionAIR, Inc. v. James* to establish a pleading standard now

propounded by the majority of this Court: "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating," " *Washburn*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008) (quoting *VisionAIR*, 167 N.C. App. 504, 510, 606 S.E.2d 359, 364 (2004)), *disc. rev. denied*, 363 N.C. 139, 674 S.E.2d 422 (2009), and "a complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets,'" *id.* at 327, 660 S.E.2d at 585-86 (quoting *VisionAIR*, 167 N.C. App. at 511, 606 S.E.2d at 364). There are two problems with relying on this language from *Washburn* to establish a pleading standard: (1) this language from *VisionAIR* is dicta because *VisionAIR* evaluated the merits of the misappropriation of trade secrets claim for the purposes of issuing a preliminary injunction, *see VisionAIR*, 167 N.C. App. at 510-11, 606 S.E.2d at 364, and (2) this language from *VisionAIR* quotes another preliminary injunction case for this proposition, *see id.* at 511, 606 S.E.2d at 364 (citing *Analog Devices, Inc. v. Michalksi*, 157 N.C. App. 462, 468-70, 579 S.E.2d 449, 453-54 (2003)).

It is important to note that

> [t]he standards under Rule 12(b)(6) are dramatically different than those for issuance of a preliminary injunction. While a motion for a preliminary injunction requires a showing of a likelihood of success on the merits, requiring more than conclusory allegations, it is well established that "[w]ith the adoption of 'notice pleading,' mere vagueness or lack of detail is no longer ground for

allowing a motion to dismiss."

*Barbarino v. Cappuccine, Inc.*, 219 N.C. App. 400, 722 S.E.2d 211, 2012 WL 698373, at *4 (unpublished) (second alteration in original) (quoting *Gatlin v. Bray*, 81 N.C. App. 639, 644, 344 S.E.2d 814, 817 (1986)), *aff'd per curiam*, 366 N.C. 330, 734 S.E.2d 570 (2012). Yet much of the majority's reasoning on this issue conflates not only these two standards, but its reasoning also conflates cases evaluating motions for summary judgment with the issue at hand. *See VisionAIR*, 167 N.C. App. at 510-11, 606 S.E.2d at 364 (evaluating whether a plaintiff was likely to succeed on the merits of its misappropriation of trade secrets claim in an appeal from an order denying a preliminary injunction); *see also Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664, 676-78 (M.D.N.C. 2009) (preliminary injunction); *UBS PaineWebber, Inc. v. Aiken*, 197 F. Supp. 2d 436, 446-48 (W.D.N.C. 2002) (preliminary injunction); *Washburn*, 190 N.C. App. at 325-27, 660 S.E.2d at 585-86 (applying standard from *VisionAIR* to a Rule 12(b)(6) motion to dismiss); *Analog Devices*, 157 N.C. App. at 468-70, 472, 579 S.E.2d at 453-54, 455 (preliminary injunction); *Combs & Assocs., v. Kennedy*, 147 N.C. App. 362, 370-71, 555 S.E.2d 634, 640 (2001) (summary judgment); *NovaCare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 477-78, 528 S.E.2d 918, 922 (2000) (preliminary injunction).. Beyond announcing a heightened pleading requirement, the majority now requires *evidence* at the pleading stage showing the plaintiff took steps to keeps its trade secrets confidential. That has never been the law in North Carolina; the only cases requiring a plaintiff to

affirmatively *prove* efforts to maintain the secrecy of a trade secret were decided at the preliminary injunction or summary judgment stage.

Succeeding on motions for both summary judgment and preliminary injunction require *proof* on the merits of the claim, while our pleading standards merely require a plaintiff to allege a "short and plain statement of the claim" giving the trial court and the defendant *notice* of the transactions or occurrences the plaintiff *intends to prove.* *Compare* N.C.G.S. § 1A-1, Rule 8(a)(1) *with id.* § 1A-1, Rule 56(c) (2017) (stating summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law"), *and Ridge Cmty. Inv'rs, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (explaining a preliminary injunction will issue only upon the movant's showing a "*likelihood* of success on the merits of his case").

By definition, trade secrets are

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that . . . [d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use[,] and . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3) (2017). Our Court of Appeals has held that "customer lists and their contact information" constitute trade secrets under the definition established in subsection 66-152(3). *Sunbelt Rentals, Inc. v. Head & Engquist Equip.*, L.L.C., 174 N.C. App. 49, 55, 620 S.E.2d 222, 227 (2005) (stating that "customer information, preferred customer pricing, employees' salaries, equipment rates, fleet mix information, budget information and structure of the business" constitute trade secrets under the Trade Secrets Protection Act), *petition for disc. rev. dismissed*, 360 N.C. 296, 629 S.E.2d 289 (2006); *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 525, 586 S.E.2d 507, 511 (2003) (noting that "information regarding customer lists, pricing formulas and bidding formulas can qualify as" a trade secret); *State ex rel. Utils. Comm'n v. MCI Telecomms. Corp.*, 132 N.C. App. 625, 634, 514 S.E.2d 276, 282 (1999) (concluding that a "compilation of information" involving customer data and business operations which has "actual or potential commercial value from not being generally known" is sufficient to constitute a trade secret); *Drouillard v. Keister Williams Newspaper Servs.*, 108 N.C. App. 169, 174, 423 S.E.2d 324, 327 (1992) (concluding customer lists and pricing and bidding formulas can constitute trade secrets), *disc. rev. denied and cert. dismissed*, 333 N.C. 344, 427 S.E.2d 617 (1993). Because these decisions have recognized that customer lists can constitute trade secrets, it is unreasonable to conclude that a plaintiff cannot rely on these holdings to plead its claims. Nonetheless, the majority again conflates the summary judgment standard, *see Combs & Assocs., Inc.*, 147 N.C. App. at 368-71, 555

S.E.2d at 639-40, and the preliminary injunction standard, *see NovaCare Orthotics*, 137 N.C. App. at 477-78, 528 S.E.2d at 922, with the Rule 12(b)(6) motion to dismiss standard by requiring plaintiffs to "come forward with . . . evidence to show that [they] took . . . special precautions to ensure the confidentiality of [their] customer information."

Further, the Court of Appeals, North Carolina business bourts, and federal courts exercising diversity jurisdiction applying North Carolina law have also treated "marketing" strategies as trade secrets. *See Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 658-59, 670 S.E.2d 321, 328-29 (2009); *Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, No. 16 CVS 4186, 2016 WL 6142993, at *4 (N.C. Super. Ct. Mecklenburg County (Bus. Ct.) Oct. 21, 2016) (unpublished); *see also Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc.*, 853 F. Supp. 2d 559, 572 (W.D.N.C. 2012); *Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1456-57 (M.D.N.C. 1996). The majority's dismissal of this part of the allegation without additional consideration of these cases is error.

Though there is no support in North Carolina for the premise that "original ideas and concepts for dance productions" constitute trade secrets, there is no authority that they are decidedly not, and similar information has been valued and protected when former employees accept similar employment from competitors. *See Amdar, Inc. v. Satterwhite*, 37 N.C. App. 410, 413, 416, 246 S.E.2d 165, 166, 168, *disc. rev. denied*, 295 N.C. 645, 248 S.E.2d 249 (1978) (affirming trial court's award of

preliminary injunctive relief prohibiting defendant-dance instructor from accepting employment in any capacity in any dance studio or school, giving instruction on dancing in any form whatsoever, and from competing with the business of the plaintiff in any other way, which included prohibiting the defendant from using or disclosing the plaintiff's trade secrets which included teaching techniques and sales methods). A forecast of the merits of a case like this reveals that performers and businessmen in the variety arts are not likely to receive protection under the Trade Secrets Protection Act because once performed, the productions can be re-created through reverse engineering and are observable by the public. *See* N.C.G.S. § 66-155; *see also* Sara J. Crasson, *The Limited Protections of Intellectual Property Law for the Variety Arts: Protecting Zacchini, Houdini, and Cirque du Soleil,* 19 Vill. Sports & Ent. L.J. 73, 77, 111-12 (2012). But in liberally construing the complaint in this case, there is no indication that these productions had actually been performed. The majority is correct that "[t]here is no presumption that a thing is a secret," *Arthur Murray Dance Studios of Cleveland, Inc. v. Witter,* 105 N.E.2d 685, 709 (Ohio Ct. Com. Pl. 1952); however, there is also no presumption that any particular idea has been disclosed.

In *Washburn*, a case cited by the majority that actually evaluated a complaint under a Rule 12(b)(6) standard (though a heightened standard as per its reliance on *VisionAIR*), the complaint's description of trade secrets that led the court to conclude that the claim was not pleaded with sufficient particularity consisted of "confidential

client information" and "confidential business information." *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 586. These are examples of "sweeping and conclusory" statements that the court intended to fail under Rule 12(b)(6). In contrast, the allegations here provided more specific details regarding both client and business information to more particularly describe the trade secrets as "original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information." Because this description is sufficient to put defendants on notice of the transactions and occurrences at issue, I cannot join the majority.

With this case this Court had an opportunity to correct the faulty logic that for over a decade has resulted in the substitution of a preliminary injunction standard for our general pleading standard governing this particular claim. Instead, the majority has validated a heightened pleading standard for a misappropriation of trade secrets claim with no discussion as to why it believes it is necessary to do so. " '[T]he term trade secret is one of the most elusive and difficult concepts in the law to define' and the "question of whether an item taken . . . constitutes a trade secret is of the type normally resolved by a fact finder after a full presentation of evidence from each side.' " Eric D. Welsh, *Betwixt and Between: Finding Specificity in Trade Secret Misappropriation Cases* (Am. Bar Ass'n, Aug. 20, 2015), http://apps.americanbar.org/litigation/committees/businesstorts/articles/ summer2015-0815-specificity-trade-secret-misappropriation-cases.html [hereinafter

*Betwixt and Between*] (ellipses in original) (quoting *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) (internal quotation marks omitted). Because I believe we should not reject plaintiffs' misappropriation of trade secrets claim at this early stage in the proceeding given our notice pleading standard,[2] I respectfully dissent.

---

[2] An alternative to requiring a heightened pleading standard to protect defendants from unwarranted discovery, while also allowing plaintiffs to proceed with their claim at this early stage, may be to require plaintiffs to identify the trade secret with more specificity prior to discovery. Instead of using Rule 12(b)(6), defendants could challenge the claim "either through a re-sequencing of discovery or a motion for a more definite statement coupled with a stay of discovery." *Betwixt and Between.*