TAC Invs., LLC v. Rodgers, 2021 NCBC 55.

STATE OF NORTH CAROLINA

WAKE COUNTY

TAC INVESTMENTS, LLC,

    Plaintiff,

v.

JOHN RODGERS,

    Defendant,

AND

JOHN RODGERS and
GOPRIME MORTGAGE, INC.,

    Counterclaim-Plaintiffs,

v.

TAC INVESTMENTS, LLC and
GREG LINDBERG,

    Counterclaim-Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 2757

**ORDER AND OPINION ON MOTION
TO DISMISS COUNTERCLAIMS**

1.    This case concerns the ownership and control of GoPrime Mortgage, Inc. ("Prime"). Its two shareholders—TAC Investments, LLC ("TAC") and John Rodgers—wish to end their relationship but dispute how to do that and who is at fault for their estrangement. TAC began the lawsuit by asserting claims against Rodgers related to a shareholder agreement between the two. Now, Prime and Rodgers have responded with counterclaims alleging fraud against TAC and TAC's founder, Greg Lindberg. Pending is a motion by TAC and Lindberg to dismiss these counterclaims. (*See* ECF No. 43.) For the following reasons, the Court **GRANTS** the motion.

*Alston & Bird LLP, by Matthew P. McGuire and Kelsey L. Kingsbery, for Counterclaim-Plaintiffs John Rodgers and GoPrime Mortgage, Inc.*

*Fox Rothschild LLP, by Matthew N. Leerberg and Troy D. Shelton, and Condon Tobin Sladek Thornton PLLC, by Aaron Z. Tobin and Jared T.S. Pace, for Counterclaim-Defendants TAC Investments, LLC and Greg Lindberg.*

Conrad, Judge.

I.
BACKGROUND

2. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the counterclaim complaint are true.

3. Prime is a residential mortgage business. Rodgers founded the company in 2005 and was its only shareholder for more than a decade. In February 2017, Rodgers sold half his shares to TAC (an entity formed and controlled by Lindberg) through a stock purchase agreement. Rodgers and TAC have co-owned Prime ever since. (*See* Countercl. ¶¶ 2, 11, 16, 17, 19, 49–51.)

4. At issue are the circumstances surrounding the stock purchase agreement. As alleged, Lindberg expressed interest in buying some or all of Prime in 2016. (*See* Countercl. ¶ 41.) Negotiations took place both in person and via remote means throughout 2016 and early 2017. Among other things, the parties "discussed Lindberg's business acumen and experience" as well as the "investments and operations" of his investment company, Eli Global. (Countercl. ¶ 43.) From these discussions, Rodgers believed that Lindberg had built a successful business using "lawful, prudent, and sound business practices." (Countercl. ¶ 44.)

5. This, allegedly, was not true. Beginning in 2014, Lindberg and Eli Global had acquired a portfolio of life insurance companies and used a substantial part of their assets to purchase other companies and personal luxuries. (*See* Countercl. ¶¶ 23, 27, 28.) These practices were risky and perhaps unlawful, yet Lindberg avoided the gaze of regulators by misrepresenting the insurance companies' investments and developing a cozy relationship with a high-ranking public official. (*See* Countercl. ¶¶ 29, 30.) In March 2019, Lindberg was indicted for bribery and wire fraud. The next year, he was convicted and imprisoned. (*See* Countercl. ¶¶ 34, 39.) Among other things, the indictment alleged that Lindberg had sought to bribe a public official in exchange for favorable treatment for his insurance companies and their investment practices. (*See* Countercl. ¶ 36.)

6. Lindberg's conviction caused turmoil for Prime, whose warehouse lenders withdrew lines of credit and stopped doing business with the company. Before the parties finalized the stock purchase agreement, Lindberg had promised to serve as co-guarantor of these lines of credit. (*See* Countercl. ¶¶ 44, 70.) After his conviction, though, Lindberg refused to continue to act as a co-guarantor, leaving Rodgers as the sole guarantor. (*See* Countercl. ¶¶ 7, 62.)

7. Relations between Prime's shareholders have worsened since then. In February 2020, TAC sued Rodgers to resolve a disagreement about their shareholder agreement. In response, Prime and Rodgers have asserted counterclaims, including two claims that aim to rescind the stock purchase agreement and a third for unfair or deceptive trade practices under N.C.G.S. § 75-1.1. Each counterclaim rests on

allegations of fraudulent misrepresentations and concealment of material facts by Lindberg leading up to the execution of the stock purchase agreement.

8. TAC and Lindberg have moved to dismiss all claims against them under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (*See* ECF Nos. 43, 44.) The motion is fully briefed, and the Court held a hearing on 12 August 2021. Thus, the motion is now ripe for determination.

II.
ANALYSIS

9. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the [counterclaim] complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the . . . claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the . . . claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

10. In deciding the motion, the Court must treat well-pleaded factual allegations as true and view the facts and permissible inferences "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted). Exhibits to the counterclaim complaint are deemed to be part of it and may also be considered, *see Krawiec v. Manly*, 370 N.C. 602, 606 (2018), but the Court need not accept as true any "conclusions of law or unwarranted deductions of fact," *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017).

## A. Recission

11. Prime and Rodgers seek to rescind the stock purchase agreement on the grounds of unilateral mistake and fraudulent inducement. Each claim for rescission is premised on the same allegations of fraud. (*See* Countercl. ¶¶ 69–74, 80–83.) As a result, both sides agree that the rescission claims may be considered together for purposes of this motion. *See, e.g.*, *Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 136 (1975) (noting that rescission is permitted when unilateral mistake is accompanied by fraud).

12. Fraud has five "essential elements": "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138 (1974). For claims of fraudulent concealment or omission, the claimant must also allege "a duty to disclose material information" because "silence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198 (1976)); *see also Brewer v. Grue*, 2020 NCBC LEXIS 96, at *8 (N.C. Super. Ct. Aug. 28, 2020).

13. Allegations of fraud must "be stated with particularity." N.C. R. Civ. P. 9(b). In a case based on misrepresentation, this "requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or

representations." *Terry v. Terry*, 302 N.C. 77, 85 (1981). In a case based on concealment, the required allegations include

> (1) the relationship between plaintiff and defendant giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what the defendant gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence*, 2007 NCBC LEXIS 20, at *9 (cleaned up).

14. Here, Prime and Rodgers have not identified the allegedly fraudulent misrepresentations and omissions as clearly as they could have. As best the Court can tell, the rescission claims are based on three distinct acts. According to TAC and Lindberg, all three are not stated with sufficient particularity and otherwise not adequately alleged. The Court agrees.

15. **Representation that Lindberg Would Act as Guarantor.** First, Prime and Rodgers allege that Lindberg falsely represented "his willingness to serve as a co-guarantor of Prime's warehouse lines of credit." (Countercl. ¶ 2.) At no point, however, do they allege the time or place that Lindberg made this false representation. The allegations therefore do not meet the particularity requirements of Rule 9(b). *See S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 611 (2008) (affirming dismissal of fraud claim that did not allege time or place

of misrepresentation); *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39 (2006) (same).*

16.    **Representation About Business Practices.**   Next, Prime and Rodgers allege that "Lindberg and his representatives fraudulently and intentionally misled Rodgers into believing that Lindberg had, at all times, operated his business portfolio in a prudent and lawful manner." (Countercl. ¶ 3.)  Again, there are no particular allegations concerning when or where the misrepresentation occurred.    Each reference is vague: the misrepresentation was purportedly made "at all times" and "on multiple occasions" during unspecified meetings and communications. (Countercl. ¶¶ 44, 69.)  This too is not sufficiently particular.  *See S.N.R. Mgmt.*, 189 N.C. App. at 611; *Bob Timberlake Collection*, 176 N.C. App. at 39; *Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 127, at *21 (N.C. Super. Ct. Oct. 28, 2020).

17.    Furthermore, it is not at all clear what the misrepresentation is.  To be fraudulent, "the representation must be definite and specific."  *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 702 (2009) (cleaned up).  At best, the allegations state that Lindberg "misled" Rodgers and that Rodgers erroneously "believ[ed]" certain things about Lindberg's business dealings.  (Countercl. ¶¶ 3, 44, 70.)  The Court cannot

---

* It bears noting that "a mere promissory representation will not support an action for fraud" unless "made with intent to deceive and with no intent to comply with the stated promise or representation."   *Braun v. Glade Valley School, Inc.*, 77 N.C. App. 83, 87 (1985). Nonperformance alone "is not sufficient to establish the necessary fraudulent intent." *Williams v. Williams*, 220 N.C. 806, 811 (1942).  The Court doubts whether the highly general allegations on this point are adequate, (*see* Countercl. ¶¶ 8, 74), but need not reach the issue given the failure to allege with particularity when and where the misrepresentation occurred.

discern a definite and specific misrepresentation in these allegations. *See Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus*, 230 N.C. App. 1, 10 (2013).

18. **Concealment of Risky, Unlawful Business Practices.** Last, Prime and Rodgers allege that Lindberg concealed that he and his companies were "engaged in risky and unscrupulous investment practices." (Countercl. ¶ 45.) Lacking are particularized allegations to show that Lindberg had a duty to disclose information about his insurance businesses and their investment practices.

19. Three circumstances give rise to a duty to disclose. The first—a fiduciary relationship—is not pertinent. "The two remaining situations in which a duty to disclose exists arise outside a fiduciary relationship, when the parties are negotiating at arm's length," as alleged here. *Harton v. Harton*, 81 N.C. App. 295, 298 (1986). In that circumstance, no duty to disclose arises as a matter of course. Rather, the duty exists only "when a party has taken affirmative steps to conceal material facts from the other" or when "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Id.*

20. The counterclaim complaint does not allege any specific acts taken by Lindberg to conceal information from Prime and Rodgers. Lindberg purportedly misrepresented his business practices to government regulators, (*see* Countercl. ¶ 30), but there is no allegation that he did so—or did anything else—to conceal information *from Rodgers*. *See Harton*, 81 N.C. App. at 298 (stating that a duty to disclose arises when a party takes affirmative steps to conceal facts "from *the other*"

(emphasis added)).  Nor is there any allegation that Rodgers knew about or reviewed any public regulatory filings.  *See Zagaroli v. Neill*, 2016 NCBC LEXIS 106, at \*23 (N.C. Super. Ct. Dec. 29, 2016) (dismissing fraud claim because claimant did not "allege any specific affirmative acts" to conceal material facts from other party).

21.    Likewise, Prime and Rodgers have not adequately alleged a failure to disclose a latent defect.  "[W]hen a fraud claim is based upon failure to disclose a latent defect, Rule 9(b) requires that the complaint allege that the plaintiff was denied any opportunity to investigate, or that it could not have discovered the allegedly concealed facts by exercise of its own reasonable diligence."  *Oberlin Cap., L.P. v. Slavin*, 2000 NCBC LEXIS 8, at \*18 (N.C. Super. Ct. Apr. 28, 2000); *see also Rosenthal v. Perkins*, 42 N.C. App. 449, 452 (1979).  No allegations suggest that Prime and Rodgers were denied the opportunity to investigate or that they could not have discovered the material facts through reasonable diligence.    Their conclusory allegation that Rodgers "exercised reasonable diligence" is insufficient.  (Countercl. ¶ 68.)

22.    **Summary.**  Prime and Rodgers have not stated their allegations of fraud with the required particularity.  The Court therefore grants the motion to dismiss the claims for recission and, in its discretion, dismisses them without prejudice.

## B.  Section 75-1.1

23.    The final claim is for violation of N.C.G.S. § 75-1.1.  This claim is based on the same allegations of fraud as the claims for rescission.  Having concluded that the allegations of fraud are inadequate, the Court further concludes that the section

75-1.1 claim must also be dismissed.  *See, e.g., Gurkin v. Sofield*, 2020 NCBC LEXIS 49, at \*41–42 (N.C. Super. Ct. Apr. 15, 2020) (dismissing section 75-1.1 claim to the extent it was based on dismissed fraud claim).  The Court therefore grants the motion to dismiss the section 75-1.1 claim.  As a result, the Court need not and does not consider the additional arguments for dismissal asserted by TAC and Lindberg.

## III.
## CONCLUSION

24.    For all these reasons, the Court **GRANTS** the motion to dismiss.  The counterclaims are **DISMISSED without prejudice**.


     **SO ORDERED**, this the 10th day of September, 2021.


                    /s/ Adam M. Conrad
                    Adam M. Conrad
                    Special Superior Court Judge
                     for Complex Business Cases