Mech. Sys. & Servs., Inc. v. Howard, 2021 NCBC 48.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

MECHANICAL SYSTEMS &
SERVICES, INC.,

          Plaintiff,

v.

MATTHEW T. HOWARD; PAUL
DRINKWATER; and CLIMATE
SYSTEMS, LLC,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 4047

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS
TO DISMISS**

1. Matthew Howard and Paul Drinkwater are former employees of Mechanical Systems & Services, Inc. ("MSS"). They now work for Climate Systems, LLC, which is one of MSS's competitors. In this lawsuit, MSS alleges that Howard, Drinkwater, and Climate Systems are competing unfairly by raiding its employees and using its trade secrets and other confidential information to solicit customers. All three defendants deny the allegations and have moved to dismiss the amended complaint. For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motions to dismiss.

> *Bell, Davis & Pitt, P.A., by Jason B. James and Joshua B. Durham, for Plaintiff Mechanical Systems & Services, Inc.*
>
> *Raynor Law Firm, PLLC, by Kenneth R. Raynor, for Defendants Matthew T. Howard and Climate Systems, LLC.*
>
> *Robinson Elliott & Smith, by William C. Robinson and Dorothy M. Gooding, for Defendant Paul Drinkwater.*

Conrad, Judge.

# I.
# BACKGROUND

2. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the amended complaint are true.

3. MSS and its subsidiaries provide an array of maintenance and construction services. (*See* Am. Compl. ¶¶ 7, 8, ECF No. 29.) The company has provided and serviced HVAC equipment—its largest business segment—for "thousands of facilities throughout North America." (Am. Compl. ¶ 9.)

4. Howard and Drinkwater once worked for MSS. Initially a sales engineer, Howard rose through the ranks to become president. (*See* Am. Compl. ¶ 18.) Drinkwater, a sales leader, managed all HVAC sales efforts in the region around Charlotte, North Carolina, although the "overwhelming majority" of his job related to two of MSS's largest client accounts. (Am. Compl. ¶ 19; *see also* Am. Compl. ¶ 20.) Both Howard and Drinkwater signed employment agreements with MSS. As relevant, the agreements include restrictive covenants that prohibit the solicitation of certain customers and employees of MSS and its affiliates as well as restrictions on the use and disclosure of trade secrets and other proprietary information. (*See generally* Am. Compl. Exs. A, B, ECF Nos. 29.1, 29.2.) The nonsolicitation covenants in Howard's agreement have expired, but the covenants in Drinkwater's agreement and the nondisclosure restrictions in both agreements remain in effect. (*See* Am. Compl. ¶ 26.)

5.    In 2018, Howard stepped down as president of MSS and left the company. A little over two years later, he acquired Climate Systems—a competitor of MSS in the HVAC field. (*See* Am. Compl. ¶ 25.) At the time, Climate Systems was on the verge of bankruptcy and had a depleted workforce. After Howard took the reins, it began filling out its roster by recruiting MSS's employees. (*See* Am. Compl. ¶¶ 25, 31, 33.)

6.    Drinkwater was one of the first to join Howard at his new company. By late 2020, Drinkwater planned to leave MSS and had begun recruiting coworkers to do the same. (*See* Am. Compl. ¶¶ 26, 29.) He did not tell MSS of his plans until the moment he resigned in December 2020. (*See* Am. Compl. ¶¶ 26, 28.) MSS alleges that, had it known what Drinkwater intended, it would not have let him continue to access company secrets, especially its database containing customer information. (*See* Am. Compl. ¶¶ 26, 53.) MSS further alleges that Drinkwater kept a substantial amount of its proprietary information—including bids, proposals, and customer orders and preferences—on personal devices in his possession after resigning. (*See* Am. Compl. ¶ 40.)

7.    In the short time since Drinkwater joined Howard, Climate Systems has begun targeting MSS's customers. (*See* Am. Compl. ¶ 34.) As alleged, Drinkwater has bid for projects in direct competition with MSS and used his knowledge of MSS's trade secrets and proprietary information to direct Howard to other customer targets. (*See* Am. Compl. ¶¶ 36–38.) Climate Systems also continues to mine MSS for new employees. (*See* Am. Compl. ¶¶ 34, 39.)

8. Claiming unfair competition, MSS brought this suit in March 2021 against Howard, Drinkwater, and Climate Systems (together "Defendants"). The amended complaint includes claims for breach of the nonsolicitation and nondisclosure clauses in Drinkwater's agreement and the nondisclosure clause in Howard's agreement. There are also claims for misappropriation of trade secrets, tortious interference with contract, and unfair or deceptive trade practices under N.C.G.S. § 75-1.1.

9. Defendants have moved to dismiss all claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (ECF Nos. 31, 33.) The motions are ripe for disposition.[1]

## II.
## ANALYSIS

10. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

11. In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most

---

[1] An outbreak of COVID-19 in Mecklenburg County required cancellation of a scheduled hearing on these motions. Because the motions are fully briefed and further delay would not serve the interests of the case, the Court elects to rule without a hearing. *See* Business Court Rule 7.4.

favorable to" the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted). Exhibits to the complaint are deemed to be part of it and may also be considered, *see Krawiec v. Manly*, 370 N.C. 602, 606 (2018), but the Court need not accept as true any "conclusions of law or unwarranted deductions of fact," *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citation and quotation marks omitted).

A. Misappropriation of Trade Secrets

12. The Court begins with the claim for misappropriation of trade secrets. Defendants contend that the claim must be dismissed because MSS has not adequately described its trade secrets or alleged acts of misappropriation.

13. "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec*, 370 N.C. at 609 (citation and quotation marks omitted). By statute, a trade secret means "business or technical information" that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C.G.S. § 66-152(3).

14. MSS alleges that its trade secrets include "customer lists; the terms of MSS's contracts with such customers; the needs of each customer; pricing information;

recruiting strategies; sales proposals and quotes for potential customers; and correspondence with potential customers regarding their needs." (Am. Compl. ¶ 49.) It further alleges that this information took "many years of effort" to develop, is housed in a computerized database, could not be duplicated by competitors, and is protected by both confidentiality agreements and layers of data security measures. (Am. Compl. ¶¶ 11, 13.) These allegations, which must be taken as true, satisfy the particularity requirement. *See, e.g.*, *Bite Busters, LLC v. Burris*, 2021 NCBC LEXIS 26, at \*21–22 (N.C. Super. Ct. Mar. 25, 2021); *NFH, Inc. v. Troutman*, 2019 NCBC LEXIS 66, at \*47–48 (N.C. Super. Ct. Oct. 29, 2019); *USConnect, LLC v. Sprout Retail, Inc.*, 2017 NCBC LEXIS 37, at \*16–17 (N.C. Super. Ct. Apr. 21, 2017).

15. The allegations of misappropriation are also adequate. Misappropriation is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent," unless independently developed or obtained through other lawful means. N.C.G.S. § 66-152(1). Here, Drinkwater allegedly accessed MSS's trade secrets after deciding to join a competitor, kept them in his possession after resigning, and then used them to solicit MSS's customers on behalf of his new employer. (*See* Am. Compl. ¶¶ 26, 38, 40.) Drinkwater also allegedly used the trade secrets to "direct Howard toward" MSS's customers. (Am. Compl. ¶ 38.) This Court has treated similar allegations as minimally sufficient to state a claim for misappropriation. *See, e.g.*, *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 NCBC LEXIS 55, at \*40–42 (N.C. Super. Ct. June 18, 2021); *Wells Fargo Ins. Servs.*

*USA, Inc. v. Link*, 2018 NCBC LEXIS 42, at \*40–42 (N.C. Super. Ct. May 8, 2018), *aff'd per curiam*, 372 N.C. 260 (2019).

16.  For these reasons, the Court denies the motions to dismiss MSS's claim for misappropriation of trade secrets.

### B. Breach of Contract

17.  MSS asserts its claim for breach of contract against Drinkwater and Howard. The Court first addresses the customer nonsolicitation clause[2] in Drinkwater's agreement before turning to the nondisclosure clauses in both agreements.

18.  **Nonsolicitation clause.** Drinkwater contends that the customer nonsolicitation clause in his agreement with MSS is facially overbroad and unenforceable. The Court agrees.

19.  A restrictive covenant must be "(1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 649–50 (1988). "If the covenant is wider in scope than is necessary to protect the business of the employer, 'it will not be enforced.' " *InVue Sec. Prods., Inc. v. Stein*, 2017 NCBC LEXIS 115, at \*10 (N.C. Super. Ct. Dec. 18, 2017) (quoting *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508 (2004)).

---

[2] The amended complaint also includes allegations that might support a breach of the employee nonsolicitation clause in Drinkwater's agreement, but neither side addressed the enforceability of that clause or any alleged breach. The Court therefore does not address it either.

20. The clause at issue provides that, for one year after leaving MSS, Drinkwater may not "attempt to sell to any Restricted Customer in the Restricted Territory any goods or services competitive with those offered for sale by the Company during the twelve (12) months prior to" the end of his employment. (Am. Compl. Ex. B § 1(a)(i).) "Company" means not only MSS but also "its subsidiaries" and "all other affiliates." (Am. Compl. Ex. B at 1.) "Restricted Customer" broadly includes actual customers of MSS or an affiliate during the year before Drinkwater's resignation, anyone with whom Drinkwater dealt during that same period, and anyone to whom MSS or an affiliate proposed to sell goods or services during the six months before his resignation. (Am. Compl. Ex. B § 4(d).) In addition, "Restricted Territory" includes a few specified counties in North Carolina and any county in North Carolina or another State in which MSS or an affiliate did business during Drinkwater's employment. (Am. Compl. Ex. B § 4(g).)

21. This is facially unreasonable. As alleged, Drinkwater's duties were limited to the HVAC field, and he spent the "overwhelming majority" of his time managing two client accounts in the Charlotte, North Carolina area. (Am. Compl. ¶ 19; *see also* Am. Compl. ¶ 20.) Yet the nonsolicitation clause purports to bar him from soliciting customers and potential customers in any field, whether or not he had any knowledge of them or contact with them. The clause also covers customers and potential customers of MSS's affiliates, which engage in businesses unrelated to HVAC services. (*See* Am. Compl. ¶ 7.) And it prohibits him from doing so anywhere MSS

or its affiliates do business, which, as alleged, includes "thousands of facilities throughout North America." (Am. Compl. ¶ 9.)

22. As our appellate courts have stressed, when a nonsolicitation clause "reaches not only clients, but potential clients, and extends to areas where [the employee] had no connections or personal knowledge of customers," it is unreasonable. *Hejl v. Hood, Hargett & Assocs., Inc.*, 196 N.C. App. 299, 307 (2009); *accord Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A., v. Zaldivar*, 264 N.C. App. 260, 272–73 (2019); *Bite Busters*, 2021 NCBC LEXIS 26, at *14. This is especially so when the clause also prohibits solicitation of customers and potential customers of affiliated companies for whom the employee did not work. *See, e.g.*, *Med. Staffing Network, Inc. v Ridgway*, 194 N.C. App. 649, 655–57 (2009); *NFH*, 2019 NCBC LEXIS 66, at *36–37; *Wells Fargo*, 2018 NCBC LEXIS 42, at *25–26.

23. The customer nonsolicitation clause in Drinkwater's agreement is overbroad and unenforceable. The Court therefore grants his motion to dismiss the claim for breach of the clause.

24. **Nondisclosure clauses.** Howard and Drinkwater do not contend that the nondisclosure clauses in their employment agreements are unenforceable. Rather, they argue that MSS has failed to allege a breach of their nondisclosure obligations. After careful review, the Court concludes that the allegations are adequate to state a claim.

25. The nondisclosure clauses in the two agreements are essentially the same. Howard and Drinkwater promised not to use or otherwise disclose MSS's "Proprietary

Information" during and after their employment. As relevant, "Proprietary Information" means information that "is private or confidential and derives independent actual or potential commercial value from not being generally known or available to the public." (Am. Compl. Ex. A § 4(e)(ii); Am. Compl. Ex. B § 4(e)(ii).)

26. The same allegations that support the claim for trade-secret misappropriation also tend to support the claim for breach of the nondisclosure clauses. Among other things, the amended complaint alleges that Drinkwater obtained trade secrets and other Proprietary Information through his employment, failed to return that information when he left, and has disclosed it to Howard and Climate Systems to compete against MSS. (*See* Am. Compl. ¶¶ 21, 26, 35, 36, 38, 40.) The amended complaint further alleges that Howard has wrongfully used and disclosed information about MSS's hiring and recruiting strategies. (*See* Am. Compl. ¶¶ 32–34.)

27. Howard and Drinkwater object that MSS has not alleged other facts, such as when the breaches occurred and whether the commercial value of the information has dissipated over time. But "a claim for breach of contract is not subject to heightened pleading standards." *AYM Techs., LLC v. Rodgers*, 2018 NCBC LEXIS 14, at \*52 (N.C. Super. Ct. Feb. 9, 2018). MSS's allegations suffice to give Howard and Drinkwater notice of the claim. Whether the information at issue is, in fact, confidential and valuable is an evidentiary question for a later stage. *See, e.g.*, *Barbarino v. Cappuccine, Inc.*, 2012 N.C. App. LEXIS 305, at \*6–9 (N.C. Ct. App.

Mar. 6, 2012) (unpublished); *NFH*, 2019 NCBC LEXIS 66, at *43 n.12; *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *10 (N.C. Super. Ct. June 19, 2019).

28. For these reasons, the Court denies the motions to dismiss MSS's claim for breach of the nondisclosure clauses.

### C. Tortious Interference with Contract

29. MSS asserts a claim for tortious interference with contract against Howard and Climate Systems. Its allegation is that they intentionally induced Drinkwater to breach his nonsolicitation and nondisclosure obligations. (*See* Am. Compl. ¶ 60.)

30. To state a claim for tortious interference with contract, the plaintiff must allege that a valid contract exists between it and a third person and that the defendant knows of the contract, intentionally induced the third person not to perform the contract, did so without justification, and caused actual damage. *See United Labs.*, 322 N.C. at 661. Inducement generally requires purposeful conduct by the defendant. *See, e.g.*, *Gallaher v. Ciszek*, 2020 NCBC LEXIS 124, at *16 (N.C. Super. Ct. Oct. 16, 2020).

31. Drinkwater's customer nonsolicitation clause is unenforceable. As a result, it "cannot support plaintiff's claim for tortious interference with contract." *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 512 (2013); *see also Power Home Solar*, 2021 NCBC LEXIS 55, at *45.

32. As to the nondisclosure clauses, Howard and Climate Systems argue that MSS has not alleged any facts to show that they intentionally induced a breach by Drinkwater. Not so. Liberally construed, the amended complaint alleges that

Howard and Climate Systems knew Drinkwater was subject to a duty of nondisclosure, encouraged him to divulge proprietary information, benefitted "by having [him] use such information to solicit" customers, and intentionally induced him to breach his agreement with MSS. (Am. Compl. ¶¶ 38, 54, 59, 60.) These are at least minimally sufficient allegations of purposeful conduct to satisfy the inducement element.

33.    Howard and Climate Systems also argue that any interference was justified. It is true that "competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221 (1988). But the amended complaint alleges that the means of competition used by Howard and Climate Systems—misappropriation of trade secrets, for example—were not lawful. This is sufficient to allege a lack of justification.

34.    For these reasons, the Court dismisses the claim for tortious interference to the extent premised on the customer nonsolicitation clause but otherwise denies the motions to dismiss the claim.

## D. <u>Section 75-1.1</u>

35.    MSS's claim for unfair or deceptive trade practices under section 75-1.1 is predicated on its underlying allegations of trade-secret misappropriation and tortious interference with contract. Because these predicate claims survive, so too does the section 75-1.1 claim. The Court therefore denies the motions to dismiss this claim.

In addition, the Court need not and does not consider Defendants' remaining arguments as to whether MSS has alleged a standalone claim under section 75-1.1.

III.
CONCLUSION

36.     For all these reasons, the Court **GRANTS in part** the motions to dismiss. The claims for breach of contract and tortious interference with contract are **DISMISSED** with prejudice to the extent predicated on the customer nonsolicitation clause in the agreement between MSS and Drinkwater.  In all other respects, the Court **DENIES** the motions to dismiss.

**SO ORDERED**, this the 11th day of August, 2021.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases