Accelerando, Inc. v. Relentless Sols., Inc., 2025 NCBC 28.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV028428-400

ACCELERANDO, INC.,

        Plaintiff,

v.

RELENTLESS SOLUTIONS, INC.
and ROBERT YODER,

        Defendants.

**ORDER AND OPINION ON MOTION
TO DISMISS AMENDED COMPLAINT**

1. **THIS MATTER** is before the Court on the 5 March 2025 filing by Defendant Relentless Solutions, Inc. (Relentless) of the *Motion to Dismiss Amended Complaint* (the Motion). (ECF No. 16 [Mot.].) Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the Rule(s)), Relentless seeks dismissal of all claims alleged against it by Plaintiff Accelerando, Inc. (Plaintiff). (Mot. 1.)

2. For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

>*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by Jennifer K. Van Zant and Amanda S. Hawkins, for Plaintiff Accelerando, Inc.*

>*Fitzgerald Hanna & Sullivan, PLLC by Andrew L. Fitzgerald, for Defendant Relentless Solutions, Inc.*

Robinson, Chief Judge.

## I.    INTRODUCTION

3. This action arises out of Plaintiff's contention that its competitor, Relentless, has misappropriated trade secrets taken by Plaintiff's former employees—including Defendant Robert Yoder (Yoder)—who left to work for

Relentless. Plaintiff alleges that, in using Plaintiff's confidential or trade secret information, Relentless has breached its contract with Plaintiff and wrongfully interfered with Plaintiff's service contracts with its customers by inducing them to terminate the service contracts to work with Relentless instead.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact when ruling on a motion to dismiss pursuant to Rule 12(b)(6), and only recites those factual allegations relevant and necessary to the Court's determination of the Motion.

### A. The Parties

5. Plaintiff is a North Carolina corporation with its principal place of business in Guilford County, North Carolina. (Am. Compl. ¶ 1, ECF No. 14 [Am. Compl.].)

6. Relentless is a Florida corporation with its principal office in North Miami, Florida. (Am. Compl. ¶ 2.)

7. Yoder is a resident of Forsyth County, North Carolina. (Am. Compl. ¶ 3.)

### B. Plaintiff's Business and Relationship with Relentless

8. Plaintiff, with the authorization of NCR Corporation (NCR), "provides software and services to businesses that license NCR Counterpoint[,]" a point-of-sale software product and intellectual property owned by NCR. (Am. Compl. ¶¶ 9–11.) "The products and services [Plaintiff] provides are highly specialized, and are targeted to clients who use NCR Counterpoint." (Am. Compl. ¶ 12.)

9. Approximately thirty companies worldwide, including Plaintiff and Relentless, have been authorized by NCR "to sell products and provide service to

customers using NCR Counterpoint within certain geographic regions." (Am. Compl. ¶¶ 10–11.)  Relentless is also authorized to provide NCR Counterpoint products and services.  (Am. Compl. ¶ 13.)

10.     On 24 August 2017, Plaintiff and Relentless entered into the Ecommerce 4 Counterpoint Reseller Agreement (the E4CP Agreement), which remains in effect. (Am. Compl. ¶ 18.)

11.     Pursuant to the E4CP Agreement, Plaintiff authorized Relentless "to resell certain products that [Plaintiff] creates for use with NCR's Counterpoint" (the E4CP Products).  (Am. Compl. ¶ 19.)

12.     As a condition of receiving a license to resell the E4CP Products, the E4CP Agreement includes a confidentiality provision whereby Relentless "agreed that it would not use in competition [Plaintiff's] confidential business information, including [Plaintiff's] price lists, data, marketing materials, and business plans."  (Am. Compl. ¶¶ 20–21.)  This provision expressly excludes "information that is publicly known or otherwise available through lawful means, or information that Relentless independently developed."  (Am. Compl. ¶ 21.)

C.    **Yoder's Employment with Plaintiff**

13.     Yoder began working for Plaintiff around 15 November 2009.  (Am. Compl. ¶ 15.)  At the time of his resignation, Yoder was Plaintiff's Vice President of Platform Services, through which he had access to Plaintiff's confidential information and clients.  (Am. Compl. ¶ 15.)

14.    In November 2009, Yoder executed a Subcontractor Non-Compete Agreement (the Non-Compete Agreement).  (Am. Compl. ¶ 38; *see* Am. Compl. Ex. A., ECF No. 14.1 [Non-Compete Agt.].)

15.    The Non-Compete Agreement includes the following covenant against competition:

> A. During the period of Subcontractor's contractual relationship with the Company and for a period of twenty-four (24) months after the termination of agreement . . . Subcontractor shall not directly or indirectly, either for Subcontractor's own account or as a partner, shareholder (other than shares regularly traded in a recognized market), officer, subcontractor, agent or otherwise, provide services or other to any of the Company's customers, clients or accounts that might be considered competitive in nature.  By way of example, and not as a limitation, the foregoing shall preclude Subcontractor from soliciting business or sales from, or attempting to convert to other sellers or providers of the same or similar products or services as provided by the Company, any customer, client, or account of the Company.

(Non-Compete Agt. at 1.)

16.    The Non-Compete Agreement also includes the following confidentiality provision:

> C. During the period of the Subcontractor's contractual relationship with the Company, and thereafter for seven (7) years, Subcontractor shall not disclose to anyone any Confidential Information.  For the purposes of this Agreement, "Confidential Information" shall include any of the Company's confidential, proprietary or trade secret information that is disclosed to Subcontractor or Subcontractor otherwise learns in the course of employment such as, but not limited to, business plans, customer lists, financial statements, software diagrams, flow charts and product plans.

(Non-Compete Agt. at 2.)    The confidentiality provision expressly excludes information that "(i) is or becomes publicly available through no act of Subcontractor,

(ii) is rightfully received by Subcontractor from a third party without restrictions[,] or (iii) is independently developed by Subcontractor."  (Non-Compete Agt. at 2.)

**D.   Yoder Resigns from Employment with Plaintiff and Begins Work for Relentless**

17.   Plaintiff alleges, upon information and belief, that Yoder met with Relentless at its headquarters in Florida in December 2021 and that, shortly thereafter, Yoder accepted a position with Relentless.  (Am. Compl. ¶¶ 41–42.)

18.   On or about 14 March 2022, Yoder informed Plaintiff that he was resigning. (Am. Compl. ¶ 43.)

19.   At some point after resigning from his employment with Plaintiff, Yoder began working for Relentless as a Solutions Architect L3.  (Am. Compl. ¶ 16.)

20.   Plaintiff alleges that its President, Craig Castor, asked Yoder when he resigned whether he was leaving to work for Relentless and that Yoder "lied and said he was not."  (Am. Compl. ¶ 43.)

21.   The same day that he resigned, Yoder forwarded certain information regarding Plaintiff's then-customer Frham to his personal email address, including "an internal Accelerando service ticket, which included Frham's customer contact information."  (Am. Compl. ¶ 45.)  Yoder "also forwarded to his personal email customer contact information for then-Accelerando customer Girl Scouts Carolinas Peaks to Piedmont."  (Am. Compl. ¶ 46.)  Plaintiff alleges that the customer information taken by Yoder is confidential.  (*See* Am. Compl. ¶ 45.)

22. Plaintiff further alleges, upon information and belief, that Yoder "also stole additional confidential and trade secret information" from Plaintiff and that he took this information to use for Relentless' benefit. (Am. Compl. ¶¶ 47–48.)

### E. Other Employees Depart Plaintiff and Join Relentless

#### 1. Scott Muller

23. Scott Muller (Muller) began working for Plaintiff in 2005 as an account manager and later became a vice president of the company. (Am. Compl. ¶ 22.)

24. Muller resigned his employment with Plaintiff in 2012 "after an argument with [Plaintiff's] President over his authority and compensation." (Am. Compl. ¶ 23.) Plaintiff alleges that, before leaving, Muller threatened that "he would steal [Plaintiff's] customers if he left." (Am. Compl. ¶ 23.)

25. Upon leaving his employment with Plaintiff, Muller "began working for one of [Plaintiff's] clients" and, shortly thereafter, Muller, "through his employer, fired [Plaintiff]." (Am. Compl. ¶ 24.)

26. In or around June 2021, Muller was hired as Vice President of Business Development at Relentless. (Am. Compl. ¶ 25.) Plaintiff alleges, upon information and belief, that approximately three months later, in or around September 2021, Muller became Relentless' Chief Operations Officer. (Am. Compl. ¶ 25.)

#### 2. Dana Dollaeye

27. In or around September 2021, Dana Dollaeye (Dollaeye) was hired as the Vice President of Client Delivery Service of Relentless. (Am. Compl. ¶ 26.)

28. Dollaeye was previously employed by Plaintiff, where she worked "in a nearly identical role, as [Plaintiff's] Vice President of Client Delivery Service and an officer of [Plaintiff]." (Am. Compl. ¶ 27.) Dollaeye resigned from her employment with Plaintiff on 14 September 2021. (Am. Compl. ¶ 29.)

29. In her role as Plaintiff's Vice President of Client Delivery Service, Dollaeye "had access to [Plaintiff's] confidential information, and was in charge of managing [Plaintiff's] client service protocols. Nearly all of [Plaintiff's] employees reported directly to her, including [Plaintiff's] Knowledge Services Professionals, service managers, and subcontractors." (Am. Compl. ¶ 28.) Dollaeye, in this role, "also had access to all information regarding rates of pay, benefit classes, and history of compensation for every employee." (Am. Compl. ¶ 28.)

30. After tendering notice, but prior to leaving employment with Plaintiff, Dollaeye emailed to her personal email certain information which Plaintiff alleges constitutes its confidential and trade secret information. (Am. Compl. ¶ 30.) Plaintiff specifically alleges that Dollaeye emailed herself a host of sensitive documents including internal best practices and policies, work templates, job descriptions, and other internal documents (collectively, the Customer Service Protocols). (*See* Am. Compl. ¶ 30.) Plaintiff alleges it has "developed and honed" these materials over the course of more than two decades. (Am. Compl. ¶ 30.)

31. Only service management employees of Plaintiff have access to the Customer Service Protocols, and the materials are password protected and are not shared outside the company. (Am. Compl. ¶ 33.)

32.     Plaintiff further alleges, upon information and belief, that Dollaeye "forwarded and stole additional trade secret materials" from Plaintiff and that she took this information to use for Relentless' benefit. (Am. Compl. ¶¶ 34–35.)

### F.     Plaintiff's Customers Leave to Work with Relentless

33.     Plaintiff alleges that the following customers have left Plaintiff to work with Relentless: (1) Girl Scouts Carolinas Peaks to Piedmont (Girl Scouts), (2) Frham, (3) Shore Décor, and (4) So-Mo Agri Supply. (Am. Compl. ¶ 54.)

## III.     PROCEDURAL BACKGROUND

34.     On 23 December 2024, Plaintiff initiated this action upon the filing of the Verified Complaint. (ECF No. 3.)

35.     On 21 February 2025, Plaintiff filed the Amended Complaint as a matter of right. (ECF No. 14.)

36.     On 5 March 2025, Relentless filed the Motion. After full briefing, the Court held a hearing on the Motion on 6 June 2025 (the Hearing), where all parties were represented by counsel. (*See* ECF No. 30.)

37.     The Motion is ripe for resolution.

## IV.     LEGAL STANDARD

38.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the Complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal

theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleadings as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health and Hum. Servs.*, 174 N.C. App. 266, 274 (2005) (quotation marks and citation omitted).

40. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (citation and quotations omitted).

40. Our Supreme Court has observed that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citations omitted). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (citations omitted).

V.     ANALYSIS

41.    Relentless moves to dismiss all of Plaintiff's claims against Relentless, which include: (1) misappropriation of trade secrets in violation of N.C.G.S. § 66-152, *et seq.* (Am. Compl. ¶¶ 55–66), (Count One); (2) breach of contract related to the E4CP Agreement (Am. Compl. ¶¶ 75–81), (Count Three); (3) wrongful interference with contract (Am. Compl. ¶¶ 82–88), (Count Four); (4) unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1, *et seq.* (Am. Compl. ¶¶ 89–96), (Count Five); (5) unjust enrichment (Am. Compl. ¶¶ 97–101), (Count Six); and (6) permanent injunction (Am. Compl. ¶¶ 102–05), (Count Seven)[1].  The Court will address each claim in turn.[2]

---

[1] The request for permanent injunction, which makes up the seventh claim for relief, was misnamed as a claim for unjust enrichment in the Amended Complaint.

[2] As an initial matter, Relentless contends in its reply brief that Plaintiff has abandoned its claims for unfair and deceptive trade practices, breach of contract, and tortious interference by making no argument regarding those claims in its brief in opposition to the Motion. (*See* Reply Br. Supp. Mot. 5, ECF No. 24 [Reply].)

Although the Court notes that Plaintiff's brief in opposition appears to focus solely on the misappropriation of trade secrets claim, the Court also notes that Relentless' brief in support of the Motion largely discusses Plaintiff's failure to state a claim for misappropriation of trade secrets and appears to otherwise generally argue that the remaining claims also fail because "[e]very one of Plaintiff's claims against Relentless hinges on a basic premise that Relentless misappropriated trade secrets or confidential information." (*See* Br. Supp. Mot. 3–4, ECF No. 17 [Br. Supp.].)

Despite the fact that the parties' briefs loosely address these other claims, the Court does not consider those claims abandoned and will still address whether they have been sufficiently pled by Plaintiff in the Amended Complaint.

**A.    Count One: Misappropriation of Trade Secrets**

42.    Plaintiff alleges that "Relentless, through Mr. Muller, Ms. Dollaeye, and Mr. Yoder, has misappropriated [Plaintiff's] trade secrets by using them against [Plaintiff] to solicit [Plaintiff's] customers." (Am. Compl. ¶¶ 49, 56, 60.)

43.    Specifically, Plaintiff contends that "[b]ecause Relentless knew from the Confidential Customer Service Protocols how [Plaintiff] handled customer service issues, it knew how to undercut [Plaintiff] to its customers." (Am. Compl. ¶ 51.) By way of example, Plaintiff alleges that "Relentless was able to point to specific 'flaws' in [Plaintiff's] handling of customer service issues as a way to encourage customers to leave [Plaintiff], or to compare its own services to [Plaintiff's]." (Am. Compl. ¶ 51.) Additionally, Plaintiff alleges that based on its misuse of Plaintiff's trade secrets, Relentless successfully encouraged four specific customers—Girl Scouts, Frham, Shore Décor, and So-Mo Agri Supply—to leave Plaintiff and work with Relentless instead. (Am. Compl. ¶ 54.)

44.    The North Carolina Trade Secrets Protection Act defines a trade secret as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> > a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
> >
> > b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3). "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec*, 370 N.C. at 609 (citation omitted).

45. Misappropriation is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C.G.S. § 66-152(1). The allegations of a complaint must identify with specificity "the acts by which the alleged misappropriations were accomplished." *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 327 (2008).

46. The crux of Relentless' argument is that the Amended Complaint does not include sufficient facts or evidence showing that Relentless has possessed and used the alleged trade secret information. (*See* Br. Supp. 3–5, 7–8.) Further, Relentless argues that the allegations in the Amended Complaint regarding misappropriation of trade secrets amount to an inevitable disclosure doctrine argument, a doctrine which has not been adopted by North Carolina courts. (*See* Br. Supp. 4–5, 10.)

47. Plaintiff contends it has sufficiently alleged misappropriation of trade secrets against Relentless based on the allegations in the Amended Complaint that (1) Yoder and Dollaeye each left their employment with Plaintiff and later began working for Relentless; (2) Yoder and Dollaeye each forwarded themselves Plaintiff's

alleged confidential or trade secret information after giving notice but prior to leaving employment with Plaintiff; (3) Relentless used the information taken by Yoder and Dollaeye to undermine relationships with Plaintiff's customers so that they would leave to work with Relentless; and (4) four of Plaintiff's customers did, in fact, leave to work with Relentless, including two customers whose information Yoder forwarded to himself prior to leaving employment with Plaintiff.  (*See* Memo. Opp'n Def.'s Mot. 6–7, 10–11, ECF No. 21 [Memo. Opp.].)

48.     The Court determines that the allegations in the Amended Complaint are minimally sufficient at this stage to state a claim for misappropriation of trade secrets against Relentless based on Relentless' alleged misappropriation of the Customer Service Protocols taken by Dollaeye.

49.     However, to the extent Count One is also based on Relentless' use of trade secrets allegedly taken by Yoder or Muller, the Court determines the allegations in the Amended Complaint insufficient to state a claim for misappropriation of trade secrets as (i) with respect to Yoder, Plaintiff only alleges that Yoder took confidential customer information, which Plaintiff concedes does not constitute trade secrets, and otherwise has generally alleged upon information and belief that Yoder stole unspecified trade secret information from Plaintiff; and (ii) with respect to Muller, the Amended Complaint contains no allegations that trade secrets were taken by Muller and subsequently used by Relentless.

50.     Further, the Court rejects Relentless' argument that these allegations warrant invoking the inevitable disclosure doctrine.  Plaintiff has not simply alleged

that, because former employees of Plaintiff who had access to trade secret information left to work for a competitor, such information will inevitably be disclosed. Rather, Plaintiff has specifically alleged that Relentless accessed the alleged trade secret information taken by Dollaeye, used it to identify flaws in Plaintiff's services and encourage customers to leave Plaintiff to work with Relentless, and, as a result, four customers left to work with Relentless. These are allegations of actual, as opposed to inevitable, disclosure and use.

51.     Therefore, the Court **DENIES** in part the Motion as to Count One to the extent it is based on Relentless' alleged misappropriation of the Customer Service Protocols taken by Dollaeye. Except as herein denied, the Motion is **GRANTED** in part as to Count One to the extent it is based on unidentified trade secrets allegedly taken by Yoder or Muller.

**B.     Count Three: Breach of E4CP Agreement**

52.     Plaintiff alleges that Relentless has breached paragraph C of the E4CP Agreement by using Plaintiff's confidential, trade secret, and proprietary information to compete with Plaintiff. (Am. Compl. ¶ 79.)

53.     Relentless appears to argue that this breach of contract claim fails because the Amended Complaint does not include allegations "explaining the link of how or why there is a belief that Relentless misused confidential information obtained during the E4CP [Agreement]." (Br. Supp. 3.)

54.     To properly plead a breach of contract claim, the claimant must allege "(1) [the] existence of a valid contract and (2) [a] breach of the terms of that contract."

*Poor v. Hill*, 138 N.C. App. 19, 26 (2000) (citing *Jackson v. Cal. Hardwood Co.*, 120 N.C. App. 870, 871 (1995)). Where each of these elements are alleged, "it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Woolard v. Davenport*, 166 N.C. App. 129, 134 (2004). "[S]tating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at \*11 (N.C. Super. Ct. June 19, 2019).

55. Upon review of the allegations in the Amended Complaint, the Court determines that Plaintiff has sufficiently pled facts that state a claim for breach of contract. Specifically, Plaintiff has alleged that the E4CP Agreement is a valid, enforceable agreement between Plaintiff and Relentless, (Am. Compl. ¶ 76), and that Relentless breached that agreement by using confidential, trade secret, and proprietary information to compete with Accelerando to solicit Plaintiff's customers to work with Relentless, (*see* Am. Compl. ¶ 79).

56. Therefore, the Court **DENIES** the Motion as to Count Three for breach of the E4CP Agreement.

## C. Count Four: Wrongful Interference with Contract

57. Plaintiff brings Count Four for wrongful interference with contract against Relentless, alleging that (1) valid contracts existed between Plaintiff and the following customers for the provision of Counterpoint-related services: Girl Scouts, Frham, Shore Décor, and So-Mo Agri Supply; (2) Relentless knew that Plaintiff had contracts with these customers; (3) Relentless used Plaintiff's confidential and trade secret information in violation of the E4CP Agreement to intentionally induce these

customers to terminate their contracts with Plaintiff; and (4) Relentless had no legal justification for interfering with Plaintiff's customers through the misuse of Plaintiff's confidential and trade secret information, which Relentless was contractually bound to protect. (Am. Compl. ¶¶ 83–85, 87.)

58. To state a claim for tortious interference with contract, a plaintiff must allege the following: (1) a valid contract exists between the plaintiff and a third person; (2) the defendant knows of the contract between plaintiff and the third party; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant in doing so acts without justification; and (5) the interference results in actual damage to the plaintiff. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988) (citing *Childress v. Abeles*, 240 N.C. 667, 674 (1954)). "The pleading standards for a tortious interference with contract claim are strict." *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *15 (N.C. Super. Ct. Feb. 8, 2017); *see also Wells Fargo Ins. Servs. USA v. Link*, 2018 NCBC LEXIS 42, at *47 (N.C. Super. Ct. May 8, 2018); *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *16 (N.C. Super. Ct. Mar. 27, 2017).

59. Relentless argues that the claim for tortious interference should fail because it "hinges on the fact that Relentless allegedly used '[Plaintiff's] confidential and trade secrets information' to win customers in the competitive NCR marketplace[,]" and Relentless believes misappropriation has not been sufficiently pled. (Br. Supp. 3–4.) Relentless also states that it "should be obvious that clients in a competitive environment will change providers." (Br. Supp. 9.)

60. While the Court recognizes that there is a "general principle that interference may be justified when the plaintiff and defendant are competitors[,]" competition in business only constitutes justifiable interference so long as it is carried on in furtherance of one's own interests and *by means that are lawful.*" *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221–22 (1988) (emphasis added). Thus, to the extent Relentless contends this claim fails because Plaintiff and Relentless are competitors, that argument does not pass muster, as Plaintiff has alleged Relentless, through unlawful means, has intentionally induced Plaintiff's customers to terminate their service agreements.

61. Upon review of the Amended Complaint, the Court concludes that the allegations are sufficient at this stage to state a claim for tortious interference with the service contracts between Plaintiff and Girl Scouts, Frham, Shore Décor, and So-Mo Agri Supply.

62. Therefore, the Court **DENIES** the Motion as to Count Four for tortious interference with contract.

### D. Count Five: Unfair and Deceptive Trade Practices

63. Plaintiff alleges that the conduct of Relentless complained of in the Amended Complaint "is oppressive and substantially injurious to customers and, therefore, unfair under N.C.[G.S.] § 75-1.1." (Am. Compl. ¶ 90.) Additionally, Plaintiff contends that Relentless' violation of the North Carolina Trade Secrets Protection Act and wrongful interference constitute unfair methods of competition and unfair or deceptive trade practices. (Am. Compl. ¶¶ 91–92.)

64. "To prevail on a claim of unfair and deceptive trade practices a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing, Inc. v. Pollard*, 101 N.C. App. 450, 460–61 (1991) (citing *Marshall v. Miller*, 302 N.C. 539 (1981)).

65. Chapter 75 of the North Carolina General Statutes (UDTPA) provides, in pertinent part, that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a). Further, the UDTPA defines "commerce" to include "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b).

66. "North Carolina courts have previously concluded that when the UDTP[A] claim rests solely upon other claims . . . which the court determines should be dismissed, the UDTP[A] claim must fail as well." *Chara, LLC v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 52, at *19 (N.C. Super. Ct. Apr. 17, 2020).

67. Because the Court has concluded that Plaintiff's allegations are sufficient to state claims for misappropriation of trade secrets and tortious interference with contract, the allegations are likewise sufficient to state a UDTPA claim as to that same conduct.

68. Therefore, the Court **DENIES** the Motion as to Count Five for violation of the UDTPA.

### E.    Count Six: Unjust Enrichment

69.    Plaintiff brings Count Six for unjust enrichment against Relentless, alleging Relentless "received the benefit of [Plaintiff's] trade secrets and confidential information" by using the alleged trade secrets and confidential information to solicit Plaintiff's customers when it was not entitled to do so.  (Am. Compl. ¶¶ 98–100.)

70.    "In North Carolina, to recover on a claim of unjust enrichment, Plaintiff must prove: (1) that it conferred a benefit on another party; (2) that the other party consciously accepted the benefit; and (3) that the benefit was not conferred gratuitously or by an interference in the affairs of the other party."  *Cnty. of Wake PDF Elec. & Supply Co., LLC v. Jacobsen*, 2020 NCBC LEXIS 103, at *29 (citing *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330 (2002)).  The benefit must be measurable. *Krawiec*, 370 N.C. at 615.

71.    "A claim for unjust enrichment 'is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law.' "  *Jacobsen*, 2020 NCBC LEXIS 103, at *28 (quoting *Booe v. Shadrick*, 322 N.C. 567, 570 (1988)). " 'The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor.' " *Krawiec*, 370 N.C. at 615 (quoting *Atlantic C. L. R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96 (1966) (citation omitted)).

72.    The basis for Plaintiff's claim of unjust enrichment is that Relentless obtained a benefit through its alleged misappropriation and improper use of

Plaintiff's trade secrets and confidential information. As a result, the Court determines that any benefit Relentless obtained through improper use of the alleged trade secrets and confidential information was taken by Relentless as opposed to being voluntarily conferred upon Relentless by Plaintiff. *See KNC Techs., LLC v. Tutton*, 2019 NCBC LEXIS 72, at *37 (N.C. Super. Ct. Oct. 9, 2019) (dismissing unjust enrichment claim where the plaintiff only alleged the defendants took some benefit for themselves for which plaintiff believed it should be awarded damages); *Am. Cirs., Inc. v. Bayatronics, LLC*, 2023 NCBC LEXIS 165, at **39–40 (N.C. Super. Ct. Dec. 8, 2023) (holding the alleged wrongful taking and dissemination of information in violation of a confidentiality agreement did not support a claim for unjust enrichment because no benefit had been conferred); *A Distrib. Co. v. Mood Prod. Grp. LLC*, 2024 NCBC LEXIS 130, at **25–26 (N.C. Super. Ct. Sept. 26, 2024) (dismissing unjust enrichment claim where the defendant was alleged to have taken a benefit for itself through the fraudulent use of the plaintiff's certificates).

73. As such, Plaintiff has not stated a proper claim for unjust enrichment. Therefore, the Court **GRANTS** the Motion as to Count Six, and Count Six for unjust enrichment is dismissed with prejudice.

F. **Count Seven: Permanent Injunction**

74. Plaintiff asks the Court to enforce the E4CP Agreement by entering a permanent injunction forbidding Relentless from using Plaintiff's confidential or trade secret information or providing the same "to anyone other than [Plaintiff], and to return without retaining copies of [Plaintiff's] trade secret and confidential and

proprietary information, and all other of [Plaintiff's] property, documents, data, and files." (Am. Compl. ¶ 103.)

75. Injunctive relief "is an ancillary remedy, not an independent cause of action." *Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005) (citation omitted). It is well-settled that "injunctive relief is not a standalone claim[.]" *Window World of St. Louis, Inc. v. Window World of Bloomington, Inc.*, 2021 NCBC LEXIS 88, at *15 (N.C. Super. Ct. Oct. 6, 2021).

76. Accordingly, the Court hereby **GRANTS** the Motion as to Count Seven, and Count Seven for permanent injunctive relief is dismissed without prejudice to Plaintiff's ability to seek this remedy at a later time if warranted by the relevant facts and law.

## VI. CONCLUSION

77. For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motion as follows:

    a. The Court **GRANTS** the Motion in part as to Count One, to the extent it is related to any unidentified trade secrets allegedly taken by Yoder or Muller and used by Relentless, and that claim is **DISMISSED** without prejudice to that limited extent;

    b. The Court **GRANTS** the Motion as to Count Six for unjust enrichment, and that claim is **DISMISSED** with prejudice;

    c. The Court **GRANTS** the Motion as to Count Seven for permanent injunction, and that claim is **DISMISSED** without prejudice; and

d.      Except as herein granted, the Motion is hereby **DENIED**.

**SO ORDERED**, this the 19th day of June, 2025.

/s/ Michael L. Robinson
Michael L. Robinson
Chief Business Court Judge